1  JOHN B. SULLIVAN (State Bar No. 96742)
   jbs@severson.com
2  MICHAEL J. STEINER (State Bar No. 112079)
   mjs@severson.com
3  MARK D. LONERGAN (State Bar No. 143622)
   mdl@severson.com
4  JOSHUA E. WHITEHAIR (State Bar No. 244900)
   jew@severson.com
5  SEVERSON & WERSON
   A Professional Corporation
6  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
7  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
8
   Attorneys for Defendant
9  WELLS FARGO BANK, N.A and
   NORTH STAR MORTGAGE
10 GUARANTY REINSURANCE
   COMPANY
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13

14
   ANDREA KAY and DANIEL MYFORD,          Case No.: C07-01351 WHA
15 individually and on behalf of all others
   similarly situated,                    **MEMORANDUM OF POINTS AND**
16                                         **AUTHORITIES IN SUPPORT OF**
                 Plaintiffs,              **WELLS FARGO'S 12(b)(6) MOTION**
17                                         **TO DISMISS, OR ALTERNATIVELY,**
              vs.                          **12(f) MOTION TO STRIKE**
18
   WELLS FARGO BANK, N.A., NORTH           Date:          August 2, 2007
19 STAR MORTGAGE GUARANTY                  Time:          8:00 a.m.
   REINSURANCE COMPANY,                    Courtroom:     9
20                                         Judge:         Hon. William H. Alsup
                 Defendants.              Complaint Date: March 3, 2007
21                                         Trial Date:    Not Set

22

23

24

25

26

27

28

07725/0078/625715.5                        Memo of Points & Authorities In Support of Motion to Dismiss, or
                                           Alternatively, 12(f) Motion to Strike
                                           Case No.: C07-01351 WHA

## I.   INTRODUCTION

Plaintiff Andrea Kay ("Kay") a ("Plaintiff"[1]) obtained a mortgage loan from defendant Wells Fargo bank, N. A. ("Wells Fargo").  Because she did not pay 20% down on the purchase of her home, she allegedly was referred to a private mortgage insurer ("PMI") to purchase mortgage insurance to protect against the risk of default.

Plaintiff now contends that she was overcharged for that mortgage insurance because the PMI entered into a reinsurance agreement with a Wells Fargo subsidiary, defendant North Star Mortgage Guaranty Reinsurance Company ("North Star").  Plaintiff further contends that North Star assumed an insufficient amount of risk from the PMI and, therefore, the reinsurance agreement was a disguised form of kickback or fee split in violation of section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.

On March 7, 2007, Plaintiff brought this action on behalf a nationwide class with a class period extending as far back as 1999.  However, RESPA has a one-year statute of limitations. 12 U.S.C. § 2614.  Thus, the claims of putative class members before March 7, 2006 are time-barred.  Equitable tolling is not available under RESPA and, even if it were, Plaintiff does not and cannot properly allege equitable tolling.  Therefore, these claims should be dismissed without leave to amend, or alternatively, stricken.

## II.   STATEMENT OF FACTS

On a motion to dismiss, the Court accepts as true the facts properly pleaded in the complaint, but not conclusions of law.  *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  Accordingly, the factual allegations of plaintiff's complaint are set forth below.  Except for purposes of this motion, defendants do not concede those "facts" are true.

Since 1999, Wells Fargo has entered into "captive reinsurance arrangements" with PMI. (First Amended Compl. ("FAC") ¶¶ 59, 64.)  Wells Fargo refers borrowers to the PMI.  (*Id.* ¶ 59.)  The PMI agrees to reinsure with North Star, an affiliate of Wells Fargo.  (*Id.*)  The PMI

---

[1]      Although Daniel Myford is also named as a plaintiff in the First Amended Complaint, he voluntarily dismissed his claims on June 13, 2007.

1  pays North Star a percentage of premiums that the borrowers pay for mortgage insurance.  (*Id.*

2  ¶ 62.)  In return, North Star assumes a portion of the PMI's risk.  (*Id.*)

3       Plaintiff claims that the reinsurance premiums North Star received from the PMI

4  constituted "fees, kickbacks or things of value" for Wells Fargo's referring borrowers to the PMI

5  in violation of RESPA, section 8(a).  (*Id.* ¶ 88.)  Plaintiff also claims that Wells Fargo violated

6  RESPA, section 8(b) by accepting (through North Star) a "portion, split or percentage of charges"

7  received by PMI for mortgage insurance.  (*Id.* ¶ 89.)

8       Kay obtained a home mortgage loan from Wells Fargo with a downpayment of less than

9  20% in August 2006, and was required to obtain mortgage insurance.  (*Id.* ¶¶ 10-11.)

10       Plaintiff also seeks to represent a nationwide class of all persons who obtained home

11  mortgage loans from Wells Fargo and purchased mortgage insurance that was subject to the

12  challenged "captive reinsurance arrangements."  (*Id.* ¶ 71.)  Those arrangements have been in

13  existence since 1999.  (*Id.* ¶¶ 6, 64.)  As Plaintiff sets no other time limit on her putative class, it

14  presumably extends back eight years as well.

15       **III.    SOME PLAINTIFFS' RESPA CLAIMS ARE TIME BARRED**

16       RESPA provides for a one year statute of limitations, "one year . . . from the date of the

17  occurrence of the violation."  12 U.S.C. § 2614.  The "date of the occurrence" is the date the loan

18  closed.  *Bloom v. Martin*, 865 F.Supp. 1377, 1386-87 (N.D. Cal. 1994), *aff'd,* 77 F.3d 318 (9th

19  Cir. 1996); *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359-60 (5th Cir. 2003).

20       Plaintiff seeks to represent a putative class some of whose members' loans closed as long

21  ago as 1999.  RESPA's one-year statute of limitations bars the claims of putative class members

22  whose loans closed before March 7, 2006.  Plaintiff's effort to escape this result by pleading

23  delayed discovery/equitable tolling fails for two reasons.  First, RESPA's limitations provision is

24  not subject to equitable tolling for delayed discovery.  Second, even if RESPA allowed tolling,

25  Plaintiff has not and cannot adequately allege any basis for tolling in this case.

26       **A.    Equitable Tolling Is Unavailable Under RESPA**

27       Plaintiff alleges equitable tolling; however, RESPA's one-year statute of limitations is

28  jurisdictional and absolute, and not subject to tolling principles.  *Hardin v. City Title & Escrow*

1   *Co.,* 797 F.2d 1037, 1041 (D.C. Cir. 1986); *Zaremski v. Keystone Title Assocs, Inc.*, 884 F.2d

2   1391 (mem.), reported at 1989 WL 100656,*1 (4th Cir. 1989).[2]

3        The face of the statute requires the one-year limitations period be construed as

4   jurisdictional.  First, Congress chose to require that any civil action be brought within "one year

5   . . . from the date of the occurrence of the violation.  12 U.S.C. § 2614.  This marks the beginning

6   of the statutory period at an objective event, the closing, a date on which the statute was actually

7   violated.  Congress' decision to select the date of the occurrence as the relevant start of the

8   limitations period reflects an explicit rejection of both the discovery rule and equitable tolling.

9        Second, the conclusion that RESPA's one-year time period is absolute is also compelled

10  by the fact that, unlike many statutes of limitations, Congress placed the RESPA civil action time

11  bar within the section that created "jurisdiction."  12 U.S.C. § 2614.  In doing so, Congress made

12  the one-year limitations period part of the jurisdictional grant, thereby preventing district courts

13  from entertaining a RESPA suit filed later.  As the D.C. Circuit reasoned in *Hardin*:

14          Because the time limitation contained in § 2614 is an integral part
            of the same sentence that creates federal and state court jurisdiction,
15          it is reasonable to conclude that Congress intended thereby to create
            a jurisdictional time limitation.  The subtitle of the section also
16          indicates Congress's intention that the time limitation be
            jurisdictional.  In enacting § 2614, Congress entitled the section
17          "JURISDICTION OF COURTS" . . .an indication of congressional
            intent, the most reasonable interpretation of which is that Congress
18          intended the statue to create the courts' "jurisdiction," i.e., a
            jurisdictional time limitation.
19

20  *Id.* at 1039 (citations omitted); *Bloom*, 865 F.Supp. at 1386-87.

21

22

23  [2]     *But see Mullinax v. Radian Guar., Inc.,* 199 F.Supp.2d 311, 328 (M.D. N.C. 2002);
    *Pedraza v. United Guar. Corp.,* 114 F.Supp.2d 1347, 1353 (N.D. Ga. 2000); *Kerby v. Mortg.*
24  *Funding Corp.,* 992 F.Supp. 787, 793- 96 (D. Md. 1998); *Moll v. U.S. Life Title Ins. Co. of N.Y.,*
    700 F.Supp. 1284, 1286-89 (S.D.N.Y. 1988).  The Ninth Circuit has not yet decided whether
25  equitable tolling applies to a RESPA claim.  *See Bloom*, 865 F.Supp. at 1387 (comparing *Hardin*
    with *Moll* and noting "it is unclear whether equitable tolling applies to RESPA").  This Court
26  should follow *Hardin*, not the district court decisions cited in this footnote, as *Hardin* is more
    persuasive and consistent with RESPA's text, structure and congressional intent as well as with
27  the Supreme Court's reluctance in recent decisions to apply equitable tolling to claims other than
    for fraud or medical malpractice.  *See TRW Inc. v. Andrews,* 534 U.S. 19, 27 (2001); *Bay Area*
28  *Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 200-01 (1997).

Courts interpreting similar statutory schemes also have concluded that Congress' inclusion of the statute of limitations as part of the grant of jurisdiction establishes congressional intent that the time period is jurisdictional and not subject to tolling. *Zipes v. TWA*, 455 U.S. 385, 393-94 (1982).

Other provisions of the statute further support this interpretation. The short one-year length of the limitations period itself establishes that Congress intended to limit private enforcement of RESPA Section 8, for it would make no sense to provide a brief limitations period when private enforcement effectively could be extended, through tolling, forever. *Burgess v. Washington*, 1999 U.S. App. LEXIS 26852 at *6, n.3 (9th Cir. 1999) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)).

This is consistent with RESPA's statutory structure, which only provides for private rights of action in limited circumstances and which delegates primary enforcement authority to HUD and certain state authorities. *See* 12 U.S.C. § 2607(d)(4) (authorizing HUD, state attorneys general, and state insurance commissioners to bring actions under Section 8). Indeed, while the statute of limitations for private suits under Section 8 is one year, the limitations period for federal and state enforcement authorities is three years.[3] *Id.* at § 2614. Likewise, when Congress intended to create a longer period of time for private RESPA suits, it did so. *Id.* (three year limitations period for actions under mortgage escrow rules in 12 U.S.C. § 2605).

## B.    Even If Tolling Were Available, Plaintiff Has Not Pleaded It

Plaintiff seeks to invoke fraudulent concealment as a reason for equitably tolling RESPA's one-year limitations period in this case.[4]  (FAC, ¶¶ 95-98.)

---

[3]     Courts have interpreted the three-year limitations period to be a statute of repose, which is entirely consistent with the jurisdictional nature of RESPA's statute of limitations. *See, e.g., Pedraza*, 114 F. Supp.2d at 1353-54.

[4]     "Courts vary in their descriptions of the contours of this equitable doctrine and how it blends together with other forms of equitable relief. *See, e.g., Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 … (1997) ("[S]ome courts have said [that the doctrine of fraudulent concealment] 'equitably tolls' the running of a limitations period, while other courts have said it is a form of 'equitable estoppel.' ")" *Thorman v. v. Am. Seafoods Co.*, 421 F.3d 1090, 1094 n. 3 (9th Cir. 2005). "Equitable estoppel" is the Ninth Circuit's normal label for tolling due to fraudulent concealment. *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006). The text uses

1   "To establish fraudulent concealment, [Plaintiff] carr[y] the burden of [alleging] that

2   (1) [Wells Fargo] 'affirmatively misled' [them] as to the operative facts that gave rise to [their]

3   claim, and (2) [Plaintiff] 'had neither actual nor constructive knowledge' of these operative facts

4   despite [their] diligence in trying to uncover them." *Thorman v. v. Am. Seafoods Co*., 421 F.3d

5   1090, 1094 (9th Cir. 2005); *accord; Grimmet v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996);

6   *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978). Furthermore,

7   these elements of fraudulent concealment must be alleged "with the particularity required by

8   Federal Rule of Civil Procedure 9(b)." *Mullinax v. Radian Guar. Inc.*, 311 F.Supp.2d 474, 488

9   (M.D. N.C. 2004); *accord: Bloom*, 865 F.Supp. at 1837; *Pedraza,*114 F.Supp.2d at 1356;

10  *Hubbard v. Fidelity Fed. Bank,* 824 F.Supp. 909, 919-20 (C.D. Cal. 1993).

11  To meet rule 9(b)'s heightened pleading requirement, Plaintiff must specify what Wells

12  Fargo allegedly did to conceal facts, including the time, place and content of any allegedly

13  fraudulent acts and the identity of the alleged actor. *Occupational-Urgent Care Healthy Sys., Inc.*

14  *v. Sutro & Co., Inc.*, 711 F.Supp. 1016, 1020 (E.D. Cal. 1989) (noting that under Rule 9(b) "the

15  pleader must state the time, place, and specific content of the false representations as well as the

16  identities of the parties to the misrepresentation.") (quoting *Schreiber Distrib. Co. v. Serv-Well*

17  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)); *see also Mullinax*, 311 F.Supp.2d at 488-89.

18  Plaintiff must also allege how they acted with due diligence but were thwarted by Wells Fargo's

19  fraudulent acts from discovering their claims until it was too late. *Rutledge*, 576 F.2d at 250;

20  *Mullinax*, 311 F.Supp.2d at 488; *Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311, 328 (M.D.

21  N.C. 2002).

22  Plaintiff's complaint does not satisfy these heightened pleading requirements. Plaintiff

23  first alleges that she could not reasonably have discovered her claim due to "the complex,

24  undisclosed and self-concealing nature" of Wells Fargo's captive reinsurance program. (FAC,

25  ¶ 95.) This allegation fails to establish fraudulent concealment for two reasons: First, the Ninth

26

27

28  the alternative "equitable tolling" label since it is used by most decisions that have considered
    fraudulent concealment as a reason for tolling RESPA's one-year limitations period.

07725/0078/625715.5     Memo of Points & Authorities In Support of Motion to Dismiss, or Alternatively, 12(f) Motion to Strike

1   Circuit has repudiated the "self-concealing wrong" notion—that is, the assertion that the violation

2   of a particular law in and of itself demonstrates fraudulent concealment.

3           "Fraudulent concealment necessarily requires active conduct by a
            defendant, above and beyond the wrongdoing upon which the
4           plaintiff's claim is filed, to prevent the plaintiff from suing in time."
            *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir.2000). If it
5           did not, "the tolling doctrine [would merge] with the substantive
            wrong, and would virtually eliminate the statute of limitations"
6           unless the defendant informs the plaintiff of the wrong at the time it
            occurs. *Id.*

7   *Easter v. Am. W. Fin.*, 381 F.3d 948, 963 n. 8 (9th Cir. 2004).

8

9           Second, a violation of RESPA section 8 is not a "self-concealing" wrong even in those

10  jurisdictions that accept the notion.

11          [A] violation of RESPA alone is not a self-concealing wrong,
            because the elements of RESPA do not include fraud, deception, or
            concealment. Instead, RESPA is violated when the lender or the
12          insurer gives or accepts a "fee, kickback, or thing of value" in
            return for the referral of business "incident to or a part of a real
13          estate settlement service." Accordingly, even if a kickback scheme
            "is generally secretive, it need not be so," and therefore it does not
14          qualify as a self-concealing wrong.

15  *Mullinax*, 199 F.Supp.2d at 329 (citations omitted); *accord Pedraza*, 114 F.Supp.2d at 1357.

16          Plaintiff also alleges that Wells Fargo was under a statutory duty to disclose the nature of

17  any relationship between it and any required provider of a settlement service and that Wells Fargo

18  failed to do so because it said "that any amounts it received from its captive reinsurance arrange-

19  ments were for services actually performed" rather than revealing that PMI paid North Star sums

20  "in excess of the value of any services rendered." (FAC ¶ 96.)

21          Again, Plaintiff is wrong. Neither 12 U.S.C. § 2604(c)[5] nor 24 C.F.R. § 3500.7(e)

22  imposes any duty on Wells Fargo to disclose whether North Star performed services worth what

23  PMI paid it. In the first place, a lender is under no duty to disclose the nature of its relationship

24  with a settlement service provider unless it requires the borrower to use that service provider.

25

26  _____

    [5]      Section 2604(c) states only that a lender must give the borrower "a good faith estimate of
27  the amount or range of charges for specific settlement services the borrower is likely to incur in
    connection with the settlement as prescribed by the Secretary." The section says nothing about
28  disclosure of the nature or value of the services for which the charges are imposed or the nature of
    any relationship between the lender and any settlement service provider.

1   24 C.F.R. § 3500.7(e)(1).  Plaintiff has not alleged that Wells Fargo required her to use any

2   particular mortgage insurer, so the regulatory duty of disclosure never arose at all.  In the second

3   place, even if it applied, the regulation does not require a detailed disclosure such as plaintiff

4   posit.  Rather, only a general statement about the "nature" of any relationship with the service

5   provider is required.  The regulation states that if a service provider is required, the good faith

6   estimate must:

> Describe the nature of any relationship between each such provider
> and the lender. Plain English references to the relationship should
> be utilized, e.g., "X is a depositor of the lender," "X is a borrower
> from the lender," "X has performed 60% of the lender's settlements
> in the past year."  (The lender is not required to keep detailed
> records of the percentages of use. Similar language, such as "X was
> used [regularly] [frequently] in our settlements the past year" is also
> sufficient for the purposes of this paragraph.) In the event that more
> than one relationship exists, each should be disclosed.

12  24 C.F.R. §3500.7(e)(1)(iii).

13       As the examples provided in the regulation show, only a terse, general description of the

14  overall nature of the relationship is required, not any disclosure regarding the value of services

15  rendered or the relationship between that value and the amount paid for the services.  "A Wells

16  Fargo affiliate may reinsure part of the mortgage insurance risk" more adequately satisfies the

17  lender's duty of disclosure under 24 C.F.R. §3500.7(e)(1)(iii).  Plaintiff does not deny that Wells

18  Fargo disclosed the general nature of North Star's relationship to PMI.  RESPA and Regulation X

19  require no more.

20       Finally, Plaintiff acknowledges that Wells Fargo disclosed the existence of the reinsurance

21  agreements with its affiliate North Star.  They allege that Wells Fargo "affirmatively represented

22  to [them] that any amounts it received from its captive reinsurance arrangements were for

23  services actually performed" and that it "provided misleading information" to them by

24  "representing that … payments were for services actually performed, rather than referral fees …."

25  (FAC, ¶¶ 96, 97.)

26       These general allegations do not satisfy Rule 9(b)'s heightened pleading requirements.

27  They give no clue as to who made these alleged misrepresentations, where or when.  *See*

28  *Mullinax,* 199 F.Supp.2d at 330.  Moreover, a mere denial of wrong-doing does not constitute

1   fraudulent concealment unless the defendant owed the plaintiff a fiduciary duty or special

2   circumstances exist to justify plaintiff's reliance on the denial.  *Texas v. Allan Constr. Co.*, 851

3   F.2d 1526, 1532-33 (5th Cir.1988); *Mullinax,* 311 F.Supp.2d at 491-92.  Here, Plaintiff alleges

4   neither any fiduciary relationship[6] nor any special circumstances justifying reliance.  The alleged

5   statements that North Star's reinsurance services were "actually performed" are simply denials of

6   liability under 12 U.S.C. §2607 and, therefore, do not support Plaintiff's claim of fraudulent

7   concealment.

8          Plaintiff's complaint is equally deficient in its attempt to allege the second element of

9   fraudulent concealment; namely, Plaintiff's lack of actual and constructive knowledge of the

10  operative facts despite their diligence in trying to uncover them.  *See Mullinax,* 199 Supp.2d at

11  331 ("[A] plaintiff cannot take advantage of equitable tolling if "a reasonable person would be

12  aware of the possibility of the claim," even if the defendant acted fraudulently.")

13         Indeed, the complaint affirmatively avers facts that show reasonable diligence would have

14  led Plaintiff to discover their claim long ago.  According to that pleading, Wells Fargo revealed

15  the existence of its "captive reinsurance" arrangements to plaintiff at or before the closing.  (FAC,

16  ¶ 96.)  Also, according to the complaint, a glance at HUD's 1997 letter would have alerted

17  Plaintiff to the fact that any captive reinsurance program violates RESPA unless reinsurance

18  services are actually furnished or performed and payment for them does not exceed their value.

19  (*Id.*, ¶¶ 51-55.)  Both state and federal regulators, Plaintiff says, "investigated and condemned

20  similar captive reinsurance arrangements in the title insurance industry."  (*Id.*, ¶¶ 56-57.)

21         Plaintiff does not allege that class members could not, though reasonable diligence, have

22  learned these facts more than a year before this suit was filed.  *See Rutledge*, 576 F.2d at 250;

23  *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415-16 (9th Cir. 1987).  Plaintiff does not explain

24  why they could not have learned the facts underlying their claims earlier, nor does she describe

25  any efforts they did make to learn the facts underlying their claims.  If anything, her pleading

26  reveals that most of the facts on which Plaintiff relies were publicly available and broadly

27  ─────────────
    [6]      *See Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 1093 n. 1,
28  283 Cal.Rptr. 53 (1991) ("The relationship between a lending institution and its borrower-client is
    not fiduciary in nature.").

- 8 -

1   disseminated.  (FAC, ¶¶ 24-57.)  Any reasonably diligent person could easily have learned those

2   facts once alerted to the existence of Wells Fargo's "captive reinsurance" arrangements, as

3   Plaintiff admits she was at or before the closing of their loans.  (*Id*. at ¶ 96.)  Indeed, Kay and the

4   now voluntarily dismissed Myford were able to bring their claims within one year of the closing

5   on their loan.  (*Id*. at ¶¶ 10-11.)

6         Plaintiff's failure to satisfy her pleading burden bars the tolling defense for all putative

7   class members whose closing occurred more than one year prior to March 7, 2007.  *Wasco Prods,*

8   *Inc. v. Southwall Techns, Inc*., 435 F.3d 989, 991 (9th Cir. 2006).[7]  Therefore, the claims of

9   putative class members accruing before March 7, 2006 are time-barred and should be dismissed.

10   **IV.    CONCLUSION**

11         For the reasons set forth above, the Court should dismiss, without leave to amend, the

12   claims of putative class members whose causes of action accrued prior to March 7, 2006.

13   Alternatively, the Court should strike plaintiff's equitable tilling allegations.

14   DATED:  June 19, 2007          SEVERSON & WERSON
                            A Professional Corporation

16
17   By: _____/s/_____
                        Michael J. Steiner

18   Attorneys for Defendant
19   WELLS FARGO BANK, N.A. and
NORTH STAR MORTGAGE GUARANTY
20   REINSURANCE COMPANY

21   I hereby attest that I have on file all holograph signatures for any signatures indicated by a
22   "conformed" signature (/S/) within this efiled document.

---

7   Citing, *inter alia*, *Guerrero,* 357 F.3d at 920 (plaintiff's equitable estoppel defense to statute of limitations was barred where plaintiff "failed to plead with particularity any . . . fraudulent behavior"); *Grimmett,* 75 F.3d at 514 (9th Cir. 1996) ("As an initial matter, [plaintiff] never pled the allegedly concealed facts in her complaint. Failure to plead these facts waives this tolling defense"); *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 120-21 (9th Cir. 1980) (affirming dismissal under Rule 12(b)(6) for failure to plead fraudulent concealment with particularity)