IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA KAY, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY N.A., NORTH STAR MORTGAGE GUARANTY RESINSURANCE COMPANY,<br><br>Defendants. | No. C 07-01351 WHA<br><br>**ORDER GRANTING MOTION TO STRIKE AND VACATING HEARING** |

**INTRODUCTION**

In this action for violations of the Real Estate Settlement Procedures Act, defendants move to dismiss the claims of putative class members whose mortgages closed outside of the statute of limitations for this action. No class has been certified and there is currently a single plaintiff who timely filed her claim. In the alternative, defendants move to strike plaintiff's allegations of equitable tolling for the putative class members. Although equitable tolling is available under RESPA, plaintiff has failed to plead facts that would indicate either that defendants took affirmative steps to conceal their alleged scheme or that the putative class members could not have discovered the scheme's existence despite due diligence. Accordingly, defendants' motion to strike is **GRANTED**, and plaintiff's allegations of equitable tolling are **STRICKEN** from the complaint. Plaintiff will be allowed leave to amend her equitable tolling

1 allegations. Seeing that no further argument is necessary, the hearing on this motion is hereby
2 **VACATED**.

### STATEMENT

In August 2006, plaintiff Andrea Kay obtained a residential mortgage loan from defendant Wells Fargo & Company, N.A. to purchase a home (Compl. ¶ 10). Kay made a down payment of less than twenty percent of the purchase price, so she was required to purchase private mortgage insurance (*ibid.*). Mortgage lenders typically prefer to finance no more than eighty percent of the purchase price with the buyer paying the remaining twenty percent as a down payment (*id.* at ¶ 24). Where a potential buyer cannot front so large a down payment, lenders look to private mortgage insurers to share some of the risk of default (*id.* at ¶ 25). The borrower pays the premiums, but in the event of default, the claims are paid to the lender (*id.* at ¶¶ 27–28). Borrowers have little opportunity to shop around for private mortgage insurance, it is alleged; they are sometimes obliged to use the insurer selected by the lender (*id.* at ¶ 29).

Private mortgage insurers can enter into contracts under which reinsurers assume some portion of the private mortgage insurer's risk for a given pool of loans (*id.* at ¶ 42). The reinsurer receives a portion of the premiums in return (*ibid.*). Some mortgage lenders establish their own affiliated or "captive" reinsurers (*id.* at ¶ 47). Lenders refer their borrowers to private mortgage insurers who agree to reinsure with the lenders' captive reinsurer, which raises concerns about kickbacks to the lender if the reinsurer does not assume risk commensurate with the premiums it receives (*id.* at ¶¶ 48–49).

Plaintiff alleges that Wells Fargo had such a captive reinsurance arrangement with private mortgage insurers in which they would agree to reinsure with defendant North Star Mortgage Guaranty Insurance Company (*id.* at ¶ 59). North Star only reinsured loans originated by Wells Fargo (*id.* at ¶ 62). Kay alleges that even though North Star received a portion of the premiums from private mortgage insurers, little or no risk was actually transferred to North Star (*id.* at ¶ 63). This resulted in more money for Wells Fargo and higher insurance premiums for mortgagees (*id.* at ¶¶ 69–70).

This action was filed on March 7, 2007, by plaintiffs Andrea Kay and Daniel Myford. Myford voluntarily dismissed his claims on June 13, 2007. Kay now purports to represent the class of persons who obtained home mortgage loans from Wells Fargo and its affiliates and who were also required to purchase private mortgage insurance (*id*. at ¶ 71). An amended complaint was filed on June 5, 2007.

## ANALYSIS

Defendants move to dismiss the claims of putative class members whose claims accrued before March 7, 2006. In the alternative, they move to strike plaintiff's allegations of equitable tolling for putative class members. As yet, no class has been certified. The makeup of the class, if any, is yet to be determined, so dismissing putative class members' claims is premature. Class allegations can, however, be stricken at the pleading stage. Rule 23(d)(4) provides that "the Court may make appropriate orders . . . requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent person, and that the action proceed accordingly." Thus, now this order turns to the merits of defendants' motion to strike the equitable tolling allegations.

Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co., Inc.*, 697 F.2d 880, 885 (9th Cir. 1983). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Miller & Wright, *Federal Practice and Procedure* § 1382, at 706–707.

Under RESPA, the statute of limitations for actions brought by private parties is one year from the date of the occurrence of the violation. 12 U.S.C. 2614. The date of the occurrence of the violation is the date on which the loan closed. *Bloom v. Martin*, 865 F. Supp. 1377, 1386–87 (N.D. Cal. 1994)(Armstrong, J.), *aff'd*, 77 F.3d 318 (9th Cir. 1996). Since this complaint was filed on March 7, 2007, any claims accruing prior to March 7, 2006, are barred by the statute of limitations absent equitable tolling.

3

### 1. AVAILABILITY OF EQUITABLE TOLLING UNDER RESPA.

Defendants first argue that equitable tolling is unavailable under RESPA because the one-year statute of limitations is jurisdictional. The Ninth Circuit has not addressed the question of whether equitable tolling is available under RESPA. The lone decision from this district to broach the question declined to decide whether equitable tolling was available. Instead, it held that the plaintiff had not sufficiently alleged that the defendants concealed their actions, so even if it was available, the plaintiff had not adequately pleaded equitable tolling. *Bloom*, 865 F. Supp. at 1386–87.

Absent a clear indication to the contrary, equitable tolling should be read into every federal statute. *See Holmberg v. Ambrecht*, 327 U.S. 396–97 (1946). Two appellate decisions have addressed whether the statute of limitations in RESPA is subject to equitable tolling with two different results. The D.C. Circuit in *Hardin v. City Title & Escrow Company*, 797 F.2d 1037, 1040–41 (D.C. Cir. 1986), held that the statute of limitations was not subject to equitable tolling. The statute of limitations was in the same section, 12 U.S.C. 2614, that established jurisdiction for RESPA claims, evincing Congress' intent that the statute of limitations was jurisdictional. The decision also pointed out that 12 U.S.C. 2614 was "identical in all material respects" to 15 U.S.C. 1640(e), the statute of limitations for the Truth in Lending Act. *Id*. at 1039. The statute of limitations for the Truth in Lending Act had been held to be jurisdictional by some circuits. By analogy, so too was the statute of limitations for RESPA.

The Seventh Circuit disagreed in *Lawyers Title Insurance Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166–67 (7th Cir. 1997), and held otherwise. That decision first noted that the majority of statutes of limitations are not considered jurisdictional. *Id*. at 1166. While discussing *Hardin*, it noted "[o]f particular relevance are the decisions which hold that the statute of limitations in the Truth in Lending Act is *not* jurisdictional even though the limitations period is found in the same section as the provision conferring jurisdiction on the federal courts to enforce the Act." *Ibid* (emphasis added). Those included a decision from the Ninth Circuit, *King v. California,* 784 F.2d 910, 914–15 (9th Cir. 1986), which held that Truth in Lending Act claims are subject to equitable tolling. Particularly since *Lawyers Title* rested its

4

1  holding on Ninth Circuit precedent, this order finds the Seventh Circuit's logic more apt.
2  Furthermore, a number of district courts have held that RESPA's statute of limitations is subject
3  to equitable tolling. *See, e.g., Mullinax v. Radian Guar., Inc.*, 199 F. Supp. 2d 311, 328 (M.D.
4  N.C. 2002) (Beaty, J.); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 793–96 (D. Md.
5  1998) (Blake, J.); *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F. Supp. 1284, 1286–89 (S.D.
6  N.Y. 1998) (Leisure, J.); *contra Zaremski v. Keystone Title Assocs, Inc.*, 884 F.2d 1391, slip op.
7  at *2 (4th Cir. 1989).

8        Defendants next argue that the existence of the one-year statute of limitations itself
9  militates against allowing equitable tolling. The limitations period for enforcement actions by
10  federal and state authorities is three years, so Congress could have made the statute of
11  limitations for private actions longer had it so chosen. 12 U.S.C. 2614. This argument is
12  unavailing as it does not speak to the concerns in equitable tolling — namely that RESPA
13  violators may conceal their schemes in such a way to make it impossible to bring a claim within
14  one year of closing. That Congress gave federal and state authorities a longer window in which
15  to bring RESPA claims does not indicate that the statute of limitations should be absolute for
16  private enforcement actions. Accordingly, contrary to defendants, equitable tolling is available
17  for RESPA claims.

18        **2.    ADEQUACY OF PLAINTIFF'S ALLEGATIONS.**

19        Defendants contend that if equitable tolling is available, plaintiff has not alleged
20  sufficient facts to show that putative class members are entitled to it. Plaintiff makes two
21  arguments to toll the statute of limitations. First, she argues that defendants' insurance kick-
22  back scheme was a "self-concealing wrong." Second, she argues that Wells Fargo affirmatively
23  took steps to conceal the scheme and its nature from its customers.

24        Plaintiff and defendants disagree as to which legal doctrine the allegations implicate.
25  Plaintiff argues that she is pleading equitable tolling, while defendants assert that she is actually
26  pleading fraudulent concealment.

27                 Equitable tolling may be applied if, despite all due diligence, a
               plaintiff is unable to obtain vital information bearing on the
28                 existence of his claim . . . If a reasonable plaintiff would not have
               known of the existence of a possible claim within the limitations

*United States District Court*
For the Northern District of California

> period, then equitable tolling will serve to extend the statute of
> limitations for filing suit until the plaintiff gathers what
> information he needs.

*Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (internal citation omitted). Fraudulent concealment overlaps with equitable estoppel, which "may come into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotation marks omitted). Analyzed under either framework, however, plaintiff's allegations, when taken true, fall short of showing entitlement to equitable tolling.

### A.     Equitable Tolling.

Plaintiff first alleges that the captive reinsurance arrangements were a "self-concealing wrong." The scheme itself was so complicated and complex that putative class members could not have uncovered the RESPA violations. These allegations by plaintiff appear to fit better within the rubric of equitable tolling, that is, the nature of the alleged scheme made it such that putative class members, despite their due diligence, could not have discovered that they had a claim. Still, plaintiff never identifies what information that the putative class did not possess. Even though Wells Fargo may have concealed the real way risk was shared with reinsurers, it told its mortgagees that private mortgage insurers may enter into reinsurance agreements under which they would share some of the risk. Wells Fargo disclosed the reinsurance relationship itself, it just did not admit to putative class members that they were violating RESPA.

It is worth noting that the Kay was able to timely file her claim. Indeed, much of the information on which plaintiff relies in her complaint was released by the Department of Housing and Development in a letter from 1997 which warned of the dangers of kick-back schemes in captive reinsurance agreements. Plaintiff also puts forth a chart showing that as far back as 2000, North Star allegedly paid out zero dollars in claims despite receiving considerable amount of money from premiums. Presumably, this information was publicly available, not just to Kay, but to the other putative class members whose mortgages closed more than one year before the Kay filed her claim.

6

Kay argues in her opposition that mortgage reinsurers are not subject to the same disclosure requirements as other insurers making the kick-back scheme easier to conceal. Reinsurers are usually closely-held companies that are not as heavily regulated as companies that sell to the general public. Furthermore, insurers incorporated in Vermont, such as North Star, are not required to file the kind of detailed annual reports required from commercial insurers. All these statements may be correct. Even if Kay had pleaded these facts, they fail to explain how Kay was able to discover the captive reinsurance scheme while all other similarly situated people were unable to do so. Plaintiff has not demonstrated that the putative class members could not have discovered that they had claims against Wells Fargo and North Star despite due diligence.

### B. Fraudulent Concealment.

Second, plaintiff argues that Wells Fargo took active steps to conceal the scheme. To toll the statute of limitations, plaintiff must plead fraudulent concealment with particularity. *Guerrero v. Gates*, 357 F.3d 911, 920 (9th Cir. 2004). "Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff suing in time." *Santa Maria*, 202 F.3d at 1170.

Plaintiff has alleged that Wells Fargo concealed the fact that North Star was not shouldering any of the risk even though it received a portion of the premiums from private mortgage insurers. In effect, plaintiff is doing exactly what the *Santa Maria* decision held insufficient — alleging that defendants concealed that they were violating RESPA. Plaintiff alleges that Wells Fargo "affirmatively misrepresented" that North Star took on some of the risk as well as some of the premiums putative class members paid to private mortgage insurers. This repeats the upshot of Kay's RESPA claim. She has failed to allege anything more than the underlying violation, not that defendants took any other steps to conceal their actions.

Finally, plaintiff alleges that Wells Fargo had an affirmative duty to disclose the true nature of its arrangement to its mortgagees. Under 12 U.S.C. 2604(c), "[e]ach lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement . . . ." If a

7

lender requires the borrower to use a certain settlement service provider, the lender must so state in clear language, give an estimate of the fees charged by the service provider, *and provide a description of the relationship between the lender and the service provider*. 24 C.F.R. 3500.7(e). According to the regulations, brief statements such as "X is a depositor of the lender," "X has performed 60% of the lender's settlements in the past year," or "X was used [regularly] [frequently] in our settlements in the past year" suffice to satisfy the lender's duty to disclose. 24 C.F.R. 3500.7(e)(1)(iii).

Plaintiff has *not* alleged that Wells Fargo required her or the putative class members to use North Star. Kay does plead that "borrowers generally have no opportunity to comparison-shop for private mortgage insurance" (Compl. ¶ 4). This could be a mere technical shortcoming in plaintiff's pleading. Even if the regulation does apply, however, plaintiff pleaded that Wells Fargo disclosed the general nature of its relationship with North Star. Plaintiff alleges that the putative class was not told that North Star received part of the premiums without assuming some of the risk. Plaintiff does not allege that Wells Fargo did not disclose the relationship. Wells Fargo and North Star were not obligated to give information about the splits of risks and premiums. It appears that a mere declarative statement that the relationship existed would suffice. On these facts, Wells Fargo fulfilled its minimal obligations under the regulations.

Plaintiff has failed to allege facts that would show that putative class members are entitled to equitable tolling or fraudulent concealment. Defendants' motion to strike is **GRANTED**. Plaintiff will be allowed leave to amend her allegations of equitable tolling. Although it was appropriate to consider these class allegations at this time, further motion practice on this issue is discouraged until plaintiff files her motion for class certification.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to strike is **GRANTED.** Plaintiff will be permitted leave to amend her equitable tolling allegations. Any amended complaint

should be filed no later than **AUGUST 23, 2007**. Seeing that no oral argument is necessary on this matter, the hearing is hereby **VACATED**.

    **IT IS SO ORDERED.**

Dated: July 24, 2007.

    WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE