United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREA KAY, individually and on behalf of
all others similarly situated,

  Plaintiffs,

 v.

WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A., NORTH STAR
MORTGAGE GUARANTY REINSURANCE
COMPANY,

  Defendants.

No. C 07-01351 WHA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

  In this action for violations of the Real Estate Settlement Procedures Act, plaintiff moves for class certification of all homeowners who obtained residential mortgage loans through Wells Fargo Bank, N.A. ("WFB") and who paid for private mortgage insurance arranged through Wells Fargo Company's ("WFC") affiliated reinsurer, North Star Mortgage Guaranty Reinsurance Company. Although equitable tolling is available under RESPA, plaintiff has failed to plead the facts necessary to toll the statue of limitations. Nonetheless, plaintiff has demonstrated the requirements to certify a more limited class. Accordingly, plaintiff's motion to certify the class is **GRANTED IN PART AND DENIED IN PART**. The class will be limited to only those borrowers who obtained mortgage loans through WFB that closed after March 7, 2006, and paid for private mortgage insurance arranged through North Star through

1  the commencement of this action. In addition, borrowers whose loans WFB acquired from
2  third-party lenders will be excluded from the class.

**STATEMENT**

In August 2006, plaintiff Andrea Kay obtained a residential mortgage loan from defendant WFB to purchase a home (Second Amd. Compl. ¶ 10). Kay made a down payment in conjunction with the home purchase of less than twenty percent of the total purchase price (*ibid.*). Given the increased risk associated with a lower down payment on a home purchase, mortgage lenders typically preferred to finance no more than eighty percent of the purchase price with the buyer required to pay the remaining twenty percent as a down payment (*id.* ¶ 20). When a potential buyer was unable to front such a large down payment, lenders looked to private mortgage insurers to share some of the risk of the transaction by financing the remaining difference. The borrower paid the premiums, but in the event of a default, the claims are paid to the lender (*id.* ¶ 24). Plaintiff alleges that borrowers were often compelled to use the private mortgage insurer chosen by the lender and given no opportunity to shop around for better rates (*ibid.*).

Private mortgage insurers could enter into contracts under which reinsurers assume some of the risk taken on by the private mortgage insurer for a given pool of loans (*id.* ¶ 38). In exchange for taking on some of the private mortgage insurer's risk, the reinsurer received a portion of the premiums paid by the borrower (*ibid.*). Some mortgage lenders established their own affiliated or "captive" reinsurers (*id.* ¶ 23). The lender would then refer the borrower to the private mortgage insurer who subsequently reinsures with the lender's captive reinsurer (*id.* ¶ 44). This raises concerns about possible kickback payments between the private mortgage insurer and the captive reinsurer if the risk taken on by the captive reinsurer was not commensurate with the payment it received (*id.* ¶¶ 45–46).

Plaintiff alleges that defendant WFC had such a kickback arrangement with seven private mortgage insurers that reinsured with WFC's subsidiary defendant North Star Guaranty Reinsurance Company (*id.* ¶ 55) . North Star solely entered into reinsurance agreements for loans financed by WFB (*ibid.*). Kay alleges that the payments made to North Star were in

2

violation of RESPA because little or no risk at all was actually transferred to North Star to justify the portion of the premiums North Star received (*id.* ¶ 59). This ultimately resulted, as the plaintiff alleges, in unwarranted increased premiums to mortgagees and more money for WFC (*id.* at ¶¶ 65–66).

This action was filed on March 7, 2007, by plaintiffs Andrea Kay and Daniel Myford. Myford voluntarily dismissed his claims on June 13, 2007. An order entered July 24 (Dkt. No. 54) found that while equitable tolling is available under RESPA, plaintiff failed to adequately plead the facts necessary to qualify for tolling. Plaintiff had not alleged that defendants took affirmative steps to conceal their alleged scheme or that the putative class members could not have discovered the scheme's existence despite due diligence. Plaintiff was allowed leave to amend her complaint in order to adequately plead the requirements for equitable tolling and fraudulent concealment (*ibid.*). Plaintiff filed her second amended complaint on August 23.

Kay filed a motion seeking class certification on October 4 seeking to represent the class of persons who obtained mortgages through WFB and who were also required to purchase private mortgage insurance (Second Amd. Compl. ¶ 68). The current order is based on that motion.

**ANALYSIS**

**1.    LEGAL STANDARD FOR CLASS CERTIFICATION.**

Contrary to the defense, in adjudicating a motion for class certification, the district court must take the allegations in the complaint as true as long as those allegations are specific enough to meet the requirements of Rule 23. In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 177–178 (1974).[*] Although we may not investigate the likelihood of prevailing on the merits, judges are at liberty to consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23. The party seeking class

---

[*] All citations in this order omit internal citations.

3

certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *See Hanon v. Data Products Corp.*, 976 F.2d 497, 508-509 (9th Cir. 1992).

### 2. THE REQUIREMENTS OF RULE 23(a) AND 23(b)(3).

Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity of the class; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class. In addition, in the instant case, plaintiff seeks to certify the class by meeting the requirements of Rule 23(b)(3). Certification under Rule 23(b)(3) requires that a district court find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

#### A. Rule 23(a)(1): Numerosity.

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. While plaintiffs need not allege the exact number or identity of class members, mere speculation of the number of class members involved does not satisfy the requirement of Rule 23(a)(1). *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal. 2007). Plaintiff requests that the Court take judicial notice that as many as 600,000 loans were originated by WFB, a substantial number of whom could be potential class members (Reply Br. note 8). This number was attained from information provided by defendants. This order finds that plaintiff has satisfied the burden required by Rule 23(a)(1).

#### B. Rule 23(a)(2): Commonality and 23(b)(3): Predominance.

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact which are common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding their claim. "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2). The predominance requirement of Rule 23(b)(3) is more stringent than the commonality

4

requirement of Rule 23(a)(2). The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." In contrast to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and individual issues." Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th 1998).

Defendants contend that four crucial liability issues pose insurmountable "individual" issues: (1) substantiality of risk transfer; (2) payment for referral of settlement services; (3) the filed-rate doctrine; and (4) the statute of limitations defense. This order finds that plaintiff has sustained the burden required by Rule 23(a)(2) and the more rigorous burden of Rule 23(b)(3) for the following reasons.

*(1)     Substantiality of Risk Transfer*.

Defendants argue that the substantiality of the risk transfer vary between the reinsurance agreements entered into by North Star and the seven private mortgage insurers making it a non-common issue among the class. Defendants rely on *Schuetz*, wherein the Ninth Circuit affirmed the district court's decision to deny class certification because the case would necessarily involve analysis of each class member's individual yield spread premium agreement with their broker. *See Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1013 (9th Cir. 2002). The facts presented in *Schuetz* differ from those presented here. In the present action, North Star's reinsurance agreements were not entered into for each individual borrower. Rather, covered pools of loans for each private mortgage insurer. Accordingly, this order finds that at most it will have to consider the seven reinsurance agreements entered into by North Star with each private mortgage insurer. Such an investigation will not be so particularized that it will overshadow the common issues of the class.

*(2)     Payment For Referral Of Settlement Services*.

Defendants next contend that because roughly twenty percent of the loans North Star insured were not originated by WFB, plaintiff cannot show by common evidence the existence of a "kickback" payment. For those loans that were originated by third-party lenders, plaintiff

5

1  would have to show that the third-party lender expected that the loans would be sold to WFB
2  and that this influenced their choice of private mortgage insurer.  Plaintiff has neither alleged
3  such facts nor offered any evidence how this individualized variation could be handled via
4  common proof.  Accordingly, the class will exclude those borrowers whose loans were acquired
5  by WFB from third-party lenders.

6  Defendants also argue that non-common proof will be needed to show that class
7  member arrangements with their private mortgage insurer qualify as a "settlement service"
8  as contemplated by 12 U.S.C. 2602(3).  Defendants point out that RESPA only applies to
9  services performed, and costs payable, at or before the closing of the real estate sale or loan.
10 *See Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996).  Defendants contend that because the
11 risk insured by the private mortgage insurer only starts after the closing and borrowers
12 often pay their premiums after closing, the transaction is not covered by RESPA.
13 Defendants' argument is without merit.  The service provided by the private mortgage insurer is
14 clearly a "service provided in connection with a real estate settlement" (12 U.S.C. 2602(3)).
15 Despite defendants' contention otherwise, it is of no matter when the risk insured actually arises
16 or when the borrower actually pays the premium.  The costs associated with the private
17 mortgage insurance agreement became payable upon the closing of the transaction.

18                           *(3)    The Filed-Rate Doctrine.*

19 The filed-rate doctrine "provides that state law, and some federal law (*e.g.*, antitrust
20 law), may not be used to invalidate a filed rate."  *Wah Chang v. Duke Energy Tradind*
21 *Marketing LLC*, 2007 DJDAR 17210 (9th Cir. 2007).  It prevents courts from awarding
22 individual service customers damages because other similarly situated customers who did not
23 sue would continue to pay the original discriminatory rate.  Accordingly, defendants argue that
24 the filed-rate doctrine will bar many putative class members from maintaining a suit depending
25 on their individual state law practice, and thereby produce non-common issues among the class.

26 This order finds defendants' argument unavailing.  Although the Ninth Circuit has yet to
27 rule on the applicability of the filed-rate doctrine to private mortgage insurance, other court
28 decisions indicate an unwillingness to fully bar plaintiffs' RESPA claims.  *See Kahrer v.*

*Ameriquest Mortg. Co.*, 418 F. Supp. 2d 748, 756 (W.D. Pa. 2006); *Moore v. Radion Group, Inc.*, 233 F. Supp. 2d 819, 825 (E.D. Tex 2002).  Statutes like RESPA are enacted to protect consumers from unfair business practices by giving consumers a private right of action against service providers.  Plaintiffs may not sue under the veil of RESPA if they simply think that the price they paid for their settlement services was unfair.  Alternatively, plaintiffs bringing a suit under RESPA may allege a violation of fair business practices through the use of illegal kickback payments.  The filed-rate doctrine bars suit from the former class of plaintiffs and not the latter.  In the instant action, plaintiff is alleging that she paid an excess amount of money due to a violation of RESPA.  As such, the filed-rate doctrine cannot bar her claims from going forward.

### (4)    *Application of Equitable Tolling and Equitable Estoppel.*

Lastly, defendants argue that RESPA's one-year statute of limitations set forth in 12 U.S.C. 2614 will apply to certain putative class members and not others, creating non-common issues of fact among the class.  Plaintiff argues that RESPA's statute of limitations should not bar any putative class member's claims because either the limitations period should be tolled or equitable estoppel should be applied.  The July 24 order found that equitable tolling was available under RESPA but that plaintiff had failed to adequately theoretically allege the facts necessary to toll the limitations period.  Plaintiff was allowed leave to amend her complaint to allege the necessary facts to establish that equitable tolling would be proper.

The July 24 order also distinguished between equitable tolling and equitable estoppel, but found that plaintiff had not established that equitable estoppel should be applied either. As explained in *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000):

> Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant.

Analyzed under either framework, plaintiff's allegations still fall short of showing an entitlement to either equitable tolling or equitable estoppel, as now explained.

7

### (a) Equitable Estoppel.

Equitable estoppel, also known as fraudulent concealment in the limitations setting, "necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff suing in time." *Santa Maria*, 202 F.3d at 1177. Such conduct may be shown through affirmative representations or active concealment on the part of a defendant.

Plaintiff still fails to adequately allege facts that show an entitlement to equitable estoppel. As discussed in the July 24 order, plaintiff may not use the underlying violation of RESPA as an active concealment. Borrowers of WFB were not required to reinsure their home mortgage loans through North Star and Kay does not contend otherwise. In fact, in the Consumer Reinsurance Disclosure received by each borrower who had private mortgagee insurance, WFB provided a toll free number by which borrowers could inquire about the private mortgage insurance arrangement and opt out of reinsuring with North Star (Herman Decl. ¶ 15). According to WFB's records, approximately 3,000 borrowers chose to opt out of reinsuring with North Star (*id*. at ¶ 16 ). Thus, there was no requirement that a borrower use North Star to reinsure his or her private mortgage insurance. There is no contention that there was.

Plaintiff also alleges that WFB affirmatively represented to the putative class members that any amount it received from its captive reinsurance arrangements was for services actually performed when, in actuality, little or no risk was transferred at all in the transaction (Second Amd. Compl. ¶ 96). Nonetheless, it is an indisputable fact in this case that North Star was and remains obligated to operate as the reinsurer for each borrower's private mortgage insurance. That North Star has yet to be called upon to make any payments in no way means that it does not continue to be liable in the event that any of the requisite contingencies occur. North Star continues to provide a service, namely reinsurance. By definition, therefore, North Star has provided and will continue to provide a service. Even if North Star was paid excessively, the fact remains that North Star has and will continue to provide a service, contrary to the conclusory wording of the complaint.

Plaintiff next alleges that WFB actively concealed information that was necessary for the putative class to discover its claims, including that the reinsurance agreement was only legal if North Star assumed additional risk and the amount of premiums North Star received in the past versus how much it had actually paid out (Second Amd. Compl. ¶ 97). "Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure." *M.D. Rutledge v. Boston Woven Hose and Rubber Company*, 576 F.2d 248, 250 (9th Cir. 1978). Here, defendant had no duty to speak beyond what was in 12 U.S.C.A. 2604(c) and the accompanying regulation in 24 C.F.R. 3500.7, which required that the service provider give "a good faith estimate of the amount or range of charges" for the service being provided. Defendants provided to each borrower a Consumer Reinsurance Disclosure and a statement of anticipated charges resulting from the private mortgage insurance service. Additionally, the heightened disclosure requirements of 24 C.F.R. 3500.7(e) did not apply because WFB did not require its borrowers to reinsure through North Star. Accordingly, North Star was under no obligation to disclose any more information than it actually did to borrowers.

### (b) Equitable Tolling.

Equitable tolling may be applied if a plaintiff was unable to obtain vital information regarding the existence of a claim despite due diligence. In the original decision regarding the application of equitable tolling, *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), the Supreme Court indicated that tolling was proper in suits whose underlying claims were based on fraud. In that context, the statute of limitations would not begin to run until the plaintiff actually discovered or should have discovered the fraud. In this case, the allegations are not of fraud, but kickback payments unauthorized under RESPA. In this respect, the July 24 order may have overstated the extent to which equitable tolling is available under RESPA. Be that as it may, this order finds that the putative class members "should have known of the possible existence" of a claim. *Santa Maria*, 202 F.3d at 1178. As discussed above, each borrower was given a disclosure of the arrangement between North Star and the private mortgage insurers and a number they could call if they had any additional questions about the arrangement or if they

9

1  wished to opt out of the arrangement. Additionally, the actual amounts of all future charges and
2  payments were known before the closing. The only real issue is whether the risk insured was
3  commensurate with the amount charged, not whether the borrowers possessed all of the
4  necessary information to discover their claims.

5  It is true that borrowers had no convenient way to judge the proportionality of the
6  reinsurance payment allocated to North Star. But the law does not insist that plaintiffs be aware
7  of every particular element of their claim. Rather, all that is required is that plaintiffs be aware
8  of the "possible existence" of a claim, a phrase used three times by the court in *Santa Maria*. *Id.*
9  at 1178–79. Through the disclosure statements, payment schedules, and general nature of the
10 transaction, plaintiff was on notice of the possible existence of a claim. To hold otherwise would
11 throw open the limitation period for many, many years.

12 **C.     Rule 23(a)(3): Typicality.**

13 The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of
14 the representative parties are typical of the claims or defenses of the class." A plaintiff's claims
15 are typical if they "are reasonably co-extensive with those of absent class members; they need
16 not be substantially identical." *Hanlon*, 150 F.3d at 1020.

17 In the instant action, defendants seem to concede that Kay does meet the typicality
18 requirement of Rule 23(a)(3). Kay's claim is typical as the rest of the class because it arises out
19 of the same business practices. As the private insurance agreements cover pools of mortgage
20 agreements, no individualized inquiry will be needed to examine either Kay's mortgage
21 agreement or any other class member's mortgage agreement. Plaintiff has sustained the burden
22 required by Rule 23(a)(3).

23 **D.     Rule 23(a)(4): Adequacy**.

24 The last hurdle of Rule 23(a) is that "the representative parties will fairly and adequately
25 protect the interests of the class." Determining whether the representative parties adequately
26 represent a class involves two inquiries: (1) does the named plaintiff and their counsel have any
27 conflicts of interest with other class members and (2) will the named plaintiff and her counsel act
28 vigorously on behalf of the class? *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507,

10

512 (9th Cir. 1978). No evidence has been presented to indicate that plaintiff has any conflicts with other putative class members or that she will not act vigorously on behalf of the class.

Plaintiff's counsel is a different story. Defendants contend that plaintiff's counsel have "taken no discovery in the 8 months this suit has been pending" (Opp. 23) and have thus shown that they are not acting vigorously on behalf of the class. In response, plaintiff's counsel claim that they gave notice to defendants of their intent to take depositions of defendants before the opposition brief was filed (Reply Br. 13). Additionally, on November 15, plaintiff's counsel served three separate discovery requests to each defendant and served notices of intent to serve third-party subpoenas on each of the private mortgage insurers associated with defendants (*id*. at 14). This order finds the prolonged wait to initiate discovery disturbing. Plaintiff's counsel was given ample time since the filing of the case management order in June to conduct discovery. Accordingly, as a condition of class certification, plaintiff must publicize notice calculated to invite other counsel to compete for class representation in this case pursuant to Rule 23(g). Plaintiff's counsel may also apply. All applicants must be prepared to meet the existing deadlines.

## CONCLUSION

For all of the above-stated reasons, plaintiff's motion for class certification is **GRANTED IN PART** and **DENIED IN PART**. The following class is hereby certified:

> All homeowners who obtained residential mortgage loans through Wells Fargo Bank, N.A. that closed after March 7, 2006, but not including those borrowers whose loans Wells Fargo Bank, N.A. acquired from third-party lenders.

All counsel shall propose a form of class notice by **DECEMBER 14, 2007** and shall jointly propose a form of notice inviting other counsel to apply as class counsel by **DECEMBER 14, 2007**. Also, counsel are required to submit a joint proposal for dissemination of notice. The

11

above definition shall apply for all purposes, including settlement. Counsel are warned that collusive settlement proposals will not be approved.

**IT IS SO ORDERED.**

Dated: November 30, 2007.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12